IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| J.H.,<br><br>   Plaintiff,<br><br>  v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>   Defendant. | Civil No. 20-3486 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

  This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits.

  For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion's reasoning.

**I.  STANDARD OF REVIEW**

  When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or

2

mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

## II.     FACTS

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff, who was 40 years old at the alleged onset date, claims disability, in part, derived from diagnoses of aortic valve dissection, hypertension and organic brain syndrome, and the mental functional limitations that are associated with these diagnoses. Plaintiff's Brief at 6.

In support of his claim, Plaintiff provided voluminous treatment records from the hospital of the University of Pennsylvania, to include the operative report, inpatient

3

hospital records, and office treatment records associated with his heart surgery in 2015. Records from Virtua Health of Camden were also provided, which documented his office treatment and electrocardiogram results. Additionally, the record contains mental status examination records from Dr. Kenneth Goldberg, medical evaluations from Dr. Steven Reed and Dr. Carolos Jusino-Berrios, a consultative examination report from Dr. Ken Klausman, and records from Dr. David Bogacki's subsequent mental assessment and residual functional capacity examination that occurred after the hearing in August 2018. Tr. 25.

### III.    ALJ'S DETERMINATION

The ALJ found Plaintiff not disabled. The ALJ noted, however, that Plaintiff's severe impairments due to aortic valve dissection, hypertension, and organic brain syndrome, and were "medically determinable impairments [that] significantly limit[ed] claimant's ability to perform basic work." Tr. 12. At Step Three of the five-step sequential analysis, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 13. Following this determination, the ALJ concluded that Plaintiff had the residual function capacity to perform a limited range of light work (with several limitations) that involves only understanding and remembering simple, routine instructions; carrying out repetitive tasks; making simple work-related decisions and using common sense; dealing with minor or few changes in a routine work setting; and being off-task up to 5% of the time in addition to normal breaks in an 8-hour workday. Tr. 14-15. The ALJ accounted for Plaintiff's asserted impairments, making accommodations: Plaintiff can frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; but that he cannot perform

work at unprotected heights or around dangerous moving machinery; that he must avoid concentrated exposure to extreme cold, wet, damp, or humid conditions; and that he must avoid concentrated exposure to fumes, dust, gases, or a poorly ventilated environment.  Tr. 14.  The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms of fatigue, memory loss, and loss of concentration, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record."  Tr. 15.  The ALJ's "paragraph B" analysis found that while Plaintiff only suffers a mild limitation with respect to interacting with others, Plaintiff has, in fact, moderate limitations in three areas: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id.*  In making these determinations, the ALJ relied heavily upon the September 2018 evaluation by Dr. Bogacki, which the ALJ afforded "great weight" as it was "supported by his examination findings" and was "generally consistent with the overall medical evidence of the record."  Tr. 19.

At Step Four of the analysis, the ALJ determined that Plaintiff would be unable to perform past relevant work.  At Step Five, however, the ALJ determined that Plaintiff could perform the occupations of mail clerk, photocopy machine operator, and cafeteria attendant.  Tr. 20.

IV.     **ANALYSIS**

Plaintiff asserts three main arguments in opposition to the ALJ's decision.  First, that the ALJ erred in concluding that Plaintiff's mental impairments did not meet the requirements of the Listings of Impairments, and that the ALJ's decision was not supported

by adequate rationale.  Plaintiff's Brief at 9.  Second, Plaintiff argues that the ALJ's finding as to his residual functional capacity was not supported by substantial evidence.  Third, Plaintiff alleges that the ALJ's determination of alternative jobs was based on incomplete testimony and is not supported by substantial evidence.  *Id.*

The issue here pertains to the September 2018 evaluation of Plaintiff by Dr. Bogacki.  In his analysis, the ALJ cited Dr. Bogacki's evaluation that Plaintiff had "low average range intellectual functioning."  Tr. 14.  As the ALJ detailed in his decision, Dr. Bogacki came to this conclusion "despite deficient range test scores of questionable validity."  *Id.*  Plaintiff asserts that this is a mischaracterization of the doctor's report, in that Dr. Bogacki believed that Plaintiff showed "questionable effort" during testing, and that he "had reservations regarding the validity of the current intellectual assessment."  Plaintiff's Brief at 16.  Plaintiff alleges that "nowhere did [Dr. Bogacki] conclude the tests were not a valid measure of current performance but that further testing was needed to reach that conclusion."  *Id.*

The contested interpretation of Dr. Bogacki's report can be addressed by analyzing the report itself, which notes the following: "[Plaintiff] displayed questionable 'effort on the testing.'  I have reservations regarding the validity of the current intellectual assessment.  The claimant states he suffered brain damage during an aortic dissection and stated that he was told he had brain damage.  The intellectual assessment is uniformly suppressed more consistent with dementia as opposed to a memory loss or some type of specific organic process.  Further diagnostic testing would be needed for more definitive diagnosis."  Exhibit 17F, at 1.  In the Mental Status Exam from the same day, Dr. Bogacki stated "[a]s noted in [the Psychological Testing Adult Weschler Intelligence Scale III] report, I had some concerns regarding the validity of the examination."  *Id.* at 4.  It is these notations that the

ALJ relied upon in making his determination that Plaintiff has only a moderate limitation with respect to understanding, remembering, or applying, despite Plaintiff's low IQ scores.

The Commissioner supports the ALJ's rationale in his brief, arguing that the "ALJ's decision contains all the discussion required to allow for meaningful review of the ALJ's listing analysis." Defendant's Brief at 7. The Commissioner argues that the ALJ reasonably concluded Plaintiff's moderate limitation by weighing Plaintiff's statements against other record evidence, and in his analysis of Dr. Goldberg's examination finding average intelligence even with apparent memory loss, and Dr. Bogacki's conclusion that Plaintiff had low average range intellectual functioning, despite the questions of validity surrounding the testing. Id. at 8.

The ALJ described Plaintiff's IQ results only once in his report, noting a verbal comprehension index of 70, a perceptional reasoning index of 60, a working memory index of 71, a processing speed index of 53, and a full-scale IQ score of 58 in analyzing Plaintiff's residual functional capacity. Tr. 18. As argued by Plaintiff in his brief, scores of this level represent functioning below the first percentile in full-scale IQ, and IQ scores of this level are more than two standard deviations below the norm. Plaintiff's Brief at 15. Nowhere in the ALJ's report is there consideration for how an IQ score of this limited degree affects Plaintiff's abilities with respect to understanding, remembering, or applying. Instead, the ALJ focuses upon the "questionable validity" of the tests as noted by Dr. Bogacki. The Third Circuit has affirmed that failure to give appropriate weight to evidence in the record— as the ALJ has failed to give appropriate weight to Plaintiff's IQ score here—constitutes a lack of substantial evidence, "especially when [the evidence] reflect[s] expert judgment ...." Brownawell v. Commissioner of Social Security, 554 F.3d 352 (3d Cir.2008) (quoting

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000)). The Court is careful to note, however, that the ALJ may reject IQ scores that are inconsistent with the record, but he must provide a legitimate basis for his decision beyond a recantation of Dr. Bogacki's suspicion without further testing. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir.2003). In this case, the ALJ's failure to give appropriate weight to Plaintiff's relevant IQ test constitutes a lack of substantial evidence.

With respect to Plaintiff's abilities in the areas of concentrating, persisting, or maintaining pace under "paragraph B," the ALJ again made a similar determination highly reliant upon Dr. Bogacki's assessment. No mention is made of Plaintiff's limited IQ, however, nor does the ALJ explain why, given Plaintiff's inability to complete the serial 7's test, does Plaintiff only present a moderate limitation as opposed to a marked limitation. Tr. at 14. For similar reasons as noted above, the ALJ's failure to give appropriate weight to Plaintiff's relevant IQ test, with respect to the areas of concentrating, persisting, or maintaining pace, constitutes a lack of substantial evidence.

Plaintiff also argues that the ALJ's decision as to Plaintiff's residual functional capacity is not supported by substantial evidence. The Court agrees. In his "paragraph B" analysis, the ALJ determined that Plaintiff, at least, suffers from moderate limitations in his ability to understand, remember, or apply information and in his ability to concentrate, persist, or maintain pace. Tr. 13, 14. In rendering his decision regarding Plaintiff's residual functional capacity, the ALJ failed to discuss how Plaintiff's IQ score—and the observed cognitive limitations noted by Dr. Goldberg in 2016 and Dr. Bogacki in 2018—impacts Plaintiff's ability to perform a "full range of tasks of an unskilled nature." Plaintiff's Brief at 22.

Lastly, the ALJ's decision that Plaintiff could engage in alternative work presents another issue.  In his decision, the ALJ determined that "based on the testimony of the vocational expert…the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Tr. 20.  Plaintiff notes in his brief that the ALJ questioned the vocational expert at the hearing that occurred on August 15, 2018 and relied upon that testimony in his decision.  It was only after the hearing, however, that Plaintiff's IQ test results and limited cognitive functions were documented by Dr. Bogacki in September 2018.  Tr. 18.  For the ALJ to rely upon the testimony of the vocational expert without the expert's consideration of the subsequent IQ test results from September 2018 constitutes a lack of substantial evidence.

The Court concludes that remand, as opposed to reversal, is appropriate.  On remand, the ALJ shall revisit his evaluation of Dr. Bogacki's examination in light of the IQ test results and the testimony of the vocational expert.  As such, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

An accompanying Order shall follow.


Date:  8/31/2021                                          /s/ Renée Marie Bumb
                                                         RENÉE MARIE BUMB, U.S.D.J.